Thank you very much. We'll reserve decision and we'll turn next to DaCosta v. Detective Fortunato Tranchina, 18-522. Good morning. Mackenzie Fillo for Detective Tranchina. This court should reverse because Detective Tranchina is entitled to qualified immunity. Muhammad was the witness with the best view of the robber's face, and when he called the police and said, I just saw the robber on TV and his name is Maxie DaCosta, that established at least arguable probable cause to believe that Maxie DaCosta was the robber. And nothing that happened after that suggested so heavily that he wasn't, that a reasonable detective could no longer rely on that initial identification. Even the plaintiff and the district court concede that the initial ID was likely sufficient for probable cause. Why wasn't it eroded by the things that happened after? I mean, the photo array just showed him, the witness, the same photograph, and one of his colleagues who worked in the store identified somebody else with 80% certainty. Why didn't those things erode the arguable probable cause or probable cause that was initially created? And also, you know, it's a little hard to tell from the video, but it looked as though there may have been a mismatch there. So why, shouldn't we take those things into account in looking at how the district judge analyzed the circumstances and decided it should go to a jury? Well, it should definitely not go to a jury. But what you do look at all the circumstances, you look at all of the evidence available to the detective, and you say, could a reasonable officer think that this person committed this crime? And even more, is it debatable? Exactly. Is it even debatable? Yes. Is it even debatable? Exactly. So as far as the photo array, first of all, that photo array didn't even need to be done. This is not a situation where they're still looking for a suspect and they're asking a witness to identify a suspect. The witness had already identified the suspect by name. So under those circumstances, a confirmatory ID is what they were doing. And in fact, in New York, you can do that with one photo. And here, the officer did a photo array just to be safe. And now it does seem that the officer used the same photo that the witness had seen on the news. It's not clear that the officer knew which. I'll tell you this. Hypothetically, three witnesses, one says that's the guy, the other based on the photo array. The other two say that person is not here based on the photo array. Is there probable cause? There's at least arguable probable cause, especially where the witness who says it's him is the one who everyone agrees had the best view of the robber's face. Because you can even see in the video he had his shirt pulled up to here when he was dealing with the witnesses for the most part. He dropped it when he was pushing Mohammed to the back of the store. And then you see he opens the door and he pushes him, I think, down some stairs. So given that Mohammed was the witness best placed to identify the perpetrator, a reasonable officer could certainly give more weight to his ID. As far as the fact that one of the other witnesses chose a filler, I think we can be reasonably confident that the filler didn't do it. That would be a huge coincidence. So what that — Doesn't that still undercut the initial identification? I think the other witness actually perhaps undercuts it. Identifying someone that everyone knows didn't do it, all you can infer from that is that this person's memory at this point is not reliable. Tell me a little bit about the difference, the different ways we should review arguable probable cause in the context of a qualified immunity for an arrest of this sort, a prosecution of this sort, as opposed to sufficiency of evidence at trial or the criminal context. I mean, it seems to me that the standard we have, we've developed for probable cause and particularly arguable probable cause, is very lenient for the police if the police are acting in good faith. Yes, that's exactly right. And if the police are not incompetent. Yes. I believe that police are protected generally from suit unless they're acting willfully or incompetently. All but the plainly incompetent or those who knowingly violate the law. Detective Tranchina is a mile away from that line. There's no way you can read the record and come to the conclusion that this is an incompetent officer or that he's purposely trying to set up Maxi da Costa. Maxi da Costa was not on anyone's radar as a suspect in this robbery until Mohammed called the police and said, I know who did it. Maxi da Costa. This is not there's just simply no evidence that the officer was trying to set him up or out to get him. And even where there is evidence that someone might be lying. This court has ruled that the officers a witness might be lying there. This court has affirmed qualified immunity where the officer couldn't be sure. Right. There's some evidence suggesting that the person did it and others suggesting that maybe this person isn't being about the third person. The third identification or lack of identification. So there's three witnesses. You have one who repeatedly said Maxi da Costa is the robber and he's the witness with the best view of the robber's face. Another the other two witnesses shortly after the robbery. They had also seen the news. And after the detective talked to Mohammed, he contacted the other witnesses and said, did you see the news? And they said that they, too, thought they had seen the news and they, too, thought that Maxi da Costa was the robber, although they couldn't be 100 percent sure. Yes, they said they said they couldn't be 100 percent sure. But this court weren't sure. Yes, this court has never held that witnesses have to be 100 percent sure. But then they did not identify. Yes. Eight months later, one of them picked a filler and the other didn't identify anybody. And the one who picked the filler said, I'm 80 percent sure. Exactly. So I think a reasonable officer from that evidence could conclude, first, that Mohammed had the best view. Second, that the other two witnesses' initial statement that they thought Maxi da Costa could be the murder or the robber, sorry, could be the robber, that that had more weight than their statement eight months later when their memory would have faded more. Is there any evidence in the record about whether the ADA knew before the grand jury hearing that about these, the failure of the other two witnesses to identify Mr. da Costa? I believe all of that was in, well, we didn't exactly create the record for that because this wasn't the holding of the, this wasn't what was being argued. It does bear on the question, does it not, of this malicious prosecution, right? Yes. Well, what, but here we have a grand jury indictment. So all of it, what we've been talking about so far is whether there's probable cause independent of the presumption that arises from the grand jury indictment. You still have the grand jury indictment, which to rebut that, the plaintiff cannot come forward with. If the prosecutor knows everything and goes ahead and prosecutes. Yes. Gets an indictment and prosecutes and knows all of the warts and difficulties with the case. Yes. Then it's, at that point, isn't the detective completely exonerated? Because that's the prosecution by the prosecutor based on the same information. The only time the detective becomes liable under those circumstances, correct me if I'm wrong, is if that detective withholds information from the prosecutor or lies to the prosecutor as part of a. . . And liberally misleads. Part of a member of the, part of a, you know, decides to, to, to, to, to engineer a bad prosecution. What we do have in this record is at page 356 there is a police report that was, that we got from the DA that has a fax line at the top. That you can see the police faxed that to the DA about a month and a half before the grand jury indictment. And it's, it's only, we only have a couple of those pages in this record because we didn't put it all before the district court because we weren't aware that we were going to have to be talking about this. But it shows that 56 pages of police records were faxed. What page, 356? 356. Yeah. If you see there's like a little line at the top that has a phone number, a 718 phone number. That 718 phone number is the precinct phone number. And we got this from the DA. So the DA received that from the precinct on March 26th I think is the date, 25th? 25, maybe 2000. Yes. And that's about a month and a half before the grand jury indictment. And that, that page refers to the video and it shows that 50, I think 54 or 56 pages were faxed that day. There's just no reason to believe that any evidence was withheld. But even if there were a gap here in the record, this court held in Savino that a gap in the record is not sufficient to overcome the presumption established by the indictment. The video, I mean, the ADA says after the fact, after they're through with the other prosecution, that it clearly isn't his guy. And this was available to him much earlier, right? It definitely was available to him much earlier. I thought it was the, well, I don't know. Did he say this is not the guy or we can't prove this case beyond a reasonable doubt? No, no. I'm sorry, go ahead. He said, oh, no, I apologize. Please, please, you answer. He said, I just tried the plaintiff for this other murder charge for a week and a half. I observed him extensively and I don't believe that he's the person in the video. But, you know, Detective Tranchina did not have the opportunity to observe him for a week and a half extensively. And as the district court itself recognized that the video is not totally clear. In fact, the district court said on the record at the hearing, you can't tell anything about the robber from this video. It's extremely grainy. That's why, I mean, it's striking that the ADA wrote he does not, all in caps. It's a little perplexing, frankly. Appear to be the same person in the video, surveillance, or stolen photos. But whatever that person concluded is not binding on this Court. And this Court can watch the video for itself and decide whether a reasonable person could view that video and think it might be the plaintiff. It may be that the ADA gets a special pat on the back for taking a careful, very careful look at the case and deciding whether to go forward. And that's normally what, that's their job. Exactly. Thank you very much. Thank you. You have reserved some time for rebuttal. Good afternoon. Scott Kornbaum for Mr. DaCosta. I want to pick up where, about the video. And the issue for the Court to decide is whether a reasonable jury could find that Detective Tranchina withheld the video pre-indictment. And here's what Judge, and here's what Judge Weinstein wrote. And the sequence of events procedurally is very important. In his opinion dated January 30, 2018, this is in the motion, I believe it's the motion for reconsideration. Yes. Denying motion for reconsideration. And this is at A221 to 222 of the joint appendix. He discusses the memorandum from the DA's office, which follows, which accompanies the dismissal of the case after the acquittal of the murder and escape charges. This document, referring to the memorandum, tends to confirm the order in the instant case. See December 12, 2017 order at 9. The dismissal was apparently based on a videotape in the possession of the police which shown a person other than plaintiff as the robber. The letter provides, this is the memo. The letter provides additional support for the Court's conclusion of an injustice if this civil case were not allowed to proceed to trial. It particularly bolsters this Court's original conclusion that, quote, a civil jury could find that Detective Tranchina did not make a complete and full statement of facts either to the grand jury or to the district jury. What is the evidence as to when the video was transmitted to the DA's office? There is, all we know is that in, by, I believe it's August, which the indictment I believe was in May, and in August we know the DA had it because there's a voluntary disclosure form which lists photographs and IDs. And when is the first reference to a video? There seems to be a March, there seems to be a March reference to the video. It's in a DD-5, there's a reference to a video, but it's one thing for, that actually supports a reasonable inference. Tranchina has it and he knows it's important, but it doesn't necessarily follow that he transcribed it to. And if I can just go through the. Correct, there is. Well, no, no, let me do a, there's no document that says I did not give it to the DA. But here's a reasonable inference, you know, district attorneys like U.S., like Federal prosecutors follow the law. One would think that before preparing to present a very serious case, armed robbery, to the grand jury, one would look at all relevant evidence. And we know, as Judge Carney pointed out, when he takes the time to view the video, he says, it's not him. But only, only with the benefits of, so here, here's the issue. He says that, but he also, there's a caveat to that. Based on my seeing the guy for days on end as a result of this trial, I can determine that it's not him. Yes, he does say that. I can't, I mean, the memo says what it says. So that's what, you know, that's what gives me pause. It may, look, and we're speculating, of course, but it may be that he gets a video, he's never seen the guy when he's presenting the case to the grand jury. Okay, could be him. I have no idea if it's him or not, right? That's an inference the jury can find as well. I mean, we are talking about summary judgment here. And so a couple of other things, and just the procedural posture of the case is important because Trankina makes much in the reply brief, well, this was never presented. Here is the judge's decision on January 30th, 2018, and a motion saying, I've watched the video. This is, this supports my conclusion. Procedurally what happened, original motions for summary judgment is on behalf of the city and Detective Shapiro, okay? City correctly says, you got the wrong guy, right? But the decision all talks, the decision, and it's in the joint impacts, it talks about Trankina, Trankina, Trankina. They move for reconsideration, and so the judge denies summary judgment, moves for reconsideration. January 30th, 2018, the order which I just read from appears. Then they file another motion for summary judgment, which appears first on 227, and that's February. That's February 2nd, 2018. So you, and counsel for Mr. DaCosta put in the same memo, put in the same dismissal memo, put in the transcript of the proceedings, so they're on notice about that. So it was not fully presented as well, or as much as it was here, hopefully you agree well, but it wasn't presented as much before Judge Weinstein. But this Court can affirm for any basis it finds that's supported by the record. And so when Trankina writes, oh, no, no, no, no, we didn't have the chance to argue, that's not essentially correct. I just wanted to say that this Court can, if it chooses, find support in the record to affirm based upon the fact that there was no transmission of the video, and it was presented. A couple of other things. The, was there a, so I'm sorry, was there a finding, I just forget, that the DA's office was deliberately misled by Detective Trankina? I don't think so. What Judge Weinstein said was either Trankina acting alone or the DA and Trankina acting together, failed to present evidence. But I can't, I don't remember a specific finding that says, well, what he says is, this, as I just read, he supports, it supports the conclusion that the video was never presented. That's in his opinion. But as far as, yeah, I mean, that's a factual finding. This takes me back to the back and forth between Judge Walker and your adversary, that at least in the context of qualified immunity, we're talking about the fact that we're talking about the plainly incompetent or people who, officials who are knowingly in the business of violating the law. So take me back on the arguable probable cause part. Two things. One is, Judge Walker, you asked is there a difference between summary judgment in 50A, 50B. Qualified immunity is qualified immunity. It's a strict standard. But there's no difference there. I mean, as far back as I remember, Persico, this Court. Sotomayor, arguable probable cause is a different concept than probable cause. Of course. Oh, no, no, I wasn't suggesting. All I'm saying is that whether you're viewing it on summary judgment or as judgment as a matter of law, the review is the same. Okay. That's all I was responding to, Judge. As far as arguable probable cause, as long as I can remember, when you have material evidence that is exculpatory and you fail to present that to the district attorney, that negates. Now, what exactly did you establish in discovery that was withheld from the district attorney? The video. A jury can find. A jury can also find that he gave them. No, no. Did you establish that one way or the other? Was there evidence in that, in that regard? Or is this now we're just guessing? I think it's a reasonable inference. I mean, again, there's nothing. You don't have. Why are we confined to an inference here when the ability of the, you know, of your side, I mean, you're the plaintiff, is to produce evidence, to develop evidence? Well, it's what I refer to as the negative pregnancy in the sense that you don't have a DD-5 that says I delivered video to the district. There's nothing from Trankina or the police department. But I think Trankina is essentially the sole actor. Isn't it within your province to ask Trankina and to, you know, develop evidence on summary judgment, before summary judgment, as to whether or not this would happen to this video? Could you repeat the question, Judge? Well, this is a summary judgment motion. Correct. And if this is a critical issue, then it would be one that presumably there would be direct evidence on. I asked him, and this is what he said. Or, you know, I asked the DA, and this is what he said. I know there was nothing from the DA, other than the memo. I'm not talking about the DA might have volunteered. I'm asking whether you got evidence. No, no, I understand. You took the matter as far as you could from an evidentiary viewpoint. I don't remember. Could I have one moment? Thank you. There's nothing before the court with regard to a question to Trankina, what did you do with the video, or something to that effect. Could I interject that the document we were just looking at together shows that the complaint follow-up informational report was transmitted to the prosecuting attorney and refers to still photos generated from video surveillance, refers to video surveillance. There's no, I don't see how a jury would be able to reasonably infer that the video was hidden somehow from the prosecutor by Detective Trankina. The 356? Yes. Specifically refers to the video. But, of course, maybe you're making a different argument, that regardless, he was then required to forward that video physically to the DA's office. And what's not in the record, and I have no reason to down court counsel, that is the precincts, but we don't know who that went to. Now, I have no doubt to, I'm not questioning Ms. Phillip as far as her representation, but that's not in there. All it is is facts. The DD-5s were forwarded to the DA's office, I believe Ms. Phillip, but that doesn't mean the video was forwarded. Thank you very much. Thank you. Ms. Lynch. So I think the plaintiff is just pointing to gaps in the evidence, and that is not sufficient to rebut the presumption of probable cause. That's exactly what this Court held in Savino. In Savino, the district court said the record does not show exactly what information the police turned over to the DA, and so that means that there's no qualified immunity and this goes to a jury. And this Court reversed and said, no, a gap in the record is a problem for the plaintiff because it is the plaintiff's burden to rebut the presumption. So just saying, well, the record doesn't show exactly the date that the video was turned over, that is not enough, especially where you here have not only the facts, but Mohammed also mentioned the video in his grand jury testimony. So if the prosecutor was really unaware that there was a video. Is that Mr. Sarwar or is that? Mohammed Sarwar, sorry. He mentioned the video in his grand jury testimony. So if the DA really was not aware that there was this video out there, he certainly could have said, hold on, let's pause this. I'm going to go find out about this video. Also, it is undisputed that the DA had the video at least by August 2008, and he didn't dismiss the robbery charge for four years. So there's just no reason to believe that there was something so clear about this video at that point. It was only after he sat next to the plaintiff for a week or a week and a half that he could really say, you know, I don't think that's the guy from the video. The plaintiff seems to really be saying that. What do you think happened here? I mean, Judge Weinstein has, he wrote extensively in this case. He did. And this is what gives me pause. Found an injustice. And obviously there was an acquittal and a determination by presumably a very able ADA that we got the wrong guy. Maybe they got the wrong guy. That can be, and the detective can still be entitled to qualified immunity. Our system presupposes that sometimes they'll get the wrong guy, right? That they don't need 100% certainty to arrest and prosecute somebody. But Judge Weinstein seems to have found some form of deliberate misrepresentation, deliberate omission, to go back to an earlier case, some half-truth, however you want to describe it. Is that correct? He seemed to think, yes, that the detective had done something improper by not telling the grand jury about more details about the investigation. And is that a, is that a, I mean, this is on summary judgment, so there are no findings, but what do we, why isn't that a genuine dispute of material fact, even in the context of a qualified immunity issue? Well, it's because it's completely wrong as a matter of law that any detective could possibly have a duty to provide unsolicited information to a grand jury. Here is very clear that Detective Tranchina answered every question honestly that he was asked. The judge did not ever suggest otherwise. He just said that the detective should have also told them other things. And that is, as a matter of law, wrong. So you're saying that there's no per se requirement that a detective, in this case, forward or provide to the prosecuting authority material evidence? No, I'm saying to the grand jury. That was what the court below thought that Detective Tranchina had done incorrect. That is, we briefed that extensively. The plaintiff doesn't even defend the district courts are holding on that point. So that is very clearly wrong. So you would describe legal error as opposed to factual error? It is a legal error, yes. Thank you very much. Thank you. We'll reserve the decision.